## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| REBECCA S. ARMINGTON, | ) | Case No. 1:20-cv-01588-CEH |
|  | ) |  |
| Plaintiff, | ) | MAGISTRATE JUDGE |
|  | ) | CARMEN E. HENDERSON |
| v. | ) |  |
|  | ) |  |
| KILOLO KIJAKAZI, | ) |  |
| Acting Commissioner of Social Security, | ) |  |
|  | ) | **MEMORANDUM OPINION** |
| Defendant. | ) | **AND ORDER** |

**I.     Introduction**

Rebecca Armington, Plaintiff, seeks judicial review of the final decision of Kilolo Kijakazi, the Acting Commissioner of Social Security (the "Commissioner"). The Commissioner denied Armington's application for disability insurance benefits under Title II of the Social Security Act. This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 12). Because the ALJ followed proper procedures and his findings are supported by substantial evidence, the Court AFFIRMS the Commissioner's final decision denying to Armington disability insurance benefits.

**II.     Procedural History**

Armington applied for disability insurance benefits on January 18, 2018. (ECF No. 9, PageID #: 67). She alleged a period of disability beginning on October 7, 2017. (ECF No. 9, PageID #: 67). The Ohio Division of Disability Determination (the "State Agency") initially denied Armington's claim on May 14, 2018. (ECF No. 9, PageID #: 67). The State Agency denied it again on August 16, 2018, during reconsideration. (ECF No. 9, PageID #: 67). Armington then requested a hearing before an ALJ. (ECF No. 9, PageID #: 67). ALJ Peter Beekman presided over

1

Armington's hearing on July 10, 2019. (ECF No. 9, PageID #: 67). Armington appeared through counsel and testified. (ECF No. 9, PageID #: 93–119). Brett Salkin testified as an impartial vocational expert. (ECF No. 9, PageID #: 97–105).

The ALJ issued his decision on August 20, 2019. (ECF No. 9, PageID #: 67–83). He determined that Armington was not disabled under the Social Security Act. (ECF No. 9, PageID #: 67–83). Thereafter, Armington asked the Appeals Council to review and set aside the ALJ's ruling. The Appeals Council denied Armington's request on June 8, 2020. (ECF No. 9, PageID #: 53–55). This timely appeal followed. (ECF No. 1). Armington filed her brief in support on December 18, 2020. (ECF No. 10). The Commissioner responded on January 19, 2021. (ECF No. 11).

## III.     Relevant Background

The ALJ's summaries of the testimony, medical evidence, and opinion evidence provide useful background for this opinion.

### A.     Testimony

#### 1.     Armington's Pre-Hearing Submissions and Hearing Testimony

When the claimant filed her application for a period of disability and disability insurance benefits, she alleged that the following conditions limit her ability to work: "arachnoid cyst of the thoracic spine; spondylosis of the cervical spine; iatrogenic spondylolisthesis… L4-L5; status post laminectomy; neck pain radiating to mid-back with numbness; increased urinary frequency (due to arachnoid cyst); bipolar disorder, recurrent episode manic, without psychotic (sic); and attention-deficit/hyperactivity disorder." She said that she stopped working because of her medical conditions and because technology was changing. (Exhibit 1E:2-3). When the claimant filed the appeal of her reconsideration denial, she reported that in May 2018, she developed more consistent pain in her right shoulder blade area, and needs to take pain medication when she sits in front of a computer screen for more than 20-30 minutes. She reported that the only medication that relieves her pain makes her "loopy," and that she is not able to drive, and has been

2

asked not to work while on the medication because she was making "ridiculous errors that [she] would not normally make." (Exhibit 7E:2).

The claimant testified that she believes she would be unable to work because she "forgets things a lot." She gave the examples that she become sidetracked when she is trying to complete tasks such as feeding her dogs and forgets to complete what she set out to do. She said that in her last job, she was told to stop working because she was making mistakes. She said that sometimes when she tries to persist in a physical activity, she needs to take pain medication, which makes her "loopy." The claimant said that she has "no quality of life," and has withdrawn socially because she is embarrassed by her difficulty communicating with others. The claimant said that she experiences fatigue on a daily basis. She says that she uses a CPAP to treat obstructive sleep apnea, which seems to work, but she still wakes up tired and has difficulty staying asleep. She testified that she has stopped driving because she is not alert enough. The claimant said that last summer, she began to lose her balance and fall, because she had lost sensation in her feet. She reported that she has just seen a neurologist to evaluate these symptoms, and he told her it was all "spinal related." The claimant also said that she believes her mental functioning changed after she was overdosed on Dilaudid during a surgical procedure, and had to be treated with Narcan and "bagged until [she] could breathe on [her] own." (Hearing testimony).

(ECF No. 9, PageID #: 75).

### 2.     Salkin's Vocational Expert Testimony

Mr. Salkin provided the classification of the occupations the claimant performed that constitute her past relevant work. His testimony was based on the classification schema set forth in the Dictionary of Occupational Titles (DOT) and its companion volume, Selected Characteristics of Occupations (SCO)... His testimony is summarized below:

• Insurance clerk, coder (DOT# 214.362-022), sedentary level of exertion, skilled (SVP 5)
• Real estate agent (DOT# 250.357-018), light level of exertion, skilled (SVP 5).
• Customer service representative (DOT# 249.362-026), sedentary level of exertion, semiskilled (SVP 4).

Mr. Salkin clarified that while the claimant's job as a customer

> service representative is generally performed at the sedentary level of exertion, the claimant actually performed this job at the light level of exertion.

(ECF No. 9, PageID #: 81).

### B.    Medical Evidence

The record contains ample evidence of Armington's back impairment. But Armington has not put the ALJ's findings with respect to her physical limitations at issue here. As such, this summary focuses on the ALJ's summaries of Armington's mental limitations.

> The claimant alleged that she has difficulty remembering to go to doctors' appointments, even when she has written down a reminder. She testified that she forgets why she has gone into a room when she went there for a specific purpose. However, the claimant also stated that she could pay bills, drive, and shop using a computer. (Exhibit 6E, Hearing testimony). In addition, the record shows that the claimant was able to provide information about her health, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, respond to questions from medical providers, and there is no mention of any issues with the claimant's short- or long-term memory. Mental status examinations from the claimant's psychiatrist indicate that she has intact immediate, recent, and remote memory. (Exhibit 6F:7, 13; 18F:10).
>
> [T]he claimant alleged that she has difficulty engaging in social activities. She reported that she has lost friendships because her friends tell her that her personality has changed and because she is reluctant to go to any activities that would involve standing too long or straining her back. She reported that she feels embarrassed in social interactions where she has difficulty expressing herself. However, according to her statements, the claimant is also able to shop. Treatment records describe her as "pleasant," and she is able to converse appropriately with the physicians who treat her. (Exhibit 6F:9; 7F:12; 12F:8; 29F:6).
>
> The claimant contended that she can pay attention for 30 minutes before requiring a break. She said that she has trouble completing tasks. She testified that she is frequently distracted when attempting to perform simple tasks at home, and moves on to other activities without completing chores or caring for her pet. On the other hand, the claimant said that she is also able to follow written and spoken instructions, and complete crossword puzzles and crafts.

Appointments with the claimant's physicians do not note any distraction or difficulty paying attention during appointments. Although her psychiatrist describes her as having poor concentration, records from his appointments do not provide any examples of specific lapses in attention that he observed. (Exhibit 6F:10, 13, 21; 12F:8; 18F:3, 10)…

The claimant asserted that she has difficulties managing her mood. Meanwhile, the objective evidence in the record showed the claimant to have appropriate grooming and hygiene, no problem getting along well with providers and staff, and normal mood and affect. (Exhibit 7F:12). During appointments with her psychiatrist, she is occasionally described as appearing sad or anxious, but just as often, his notes indicate that she presented as calm, pleasant and euthymic. (Exhibit 6F:7, 20-21; 18F:9; 29F:6, 12).

(ECF No. 9, PageID #: 71–72).

### C.      Opinion Evidence

#### 1.      State Agency Psychological Consultants Finnerty and Banks

The state agency psychological consultant, Todd Finnerty, Psy.D opined that the claimant has moderate limitations in the areas of concentrating, persisting, or maintaining pace. He found that she can sustain … static tasks without fast pace. (Exhibit 2A:3, 6)…

(ECF No. 9, PageID #: 72).

Additionally, Sandra Banks, Ph.D., reviewed Armington's claim on reconsideration. She adopted Finnerty's findings but added another possible limitation in regards to concentrating, persisting, and maintaining pace: Armington "*may* require occasional redirection due to concentration difficulties." (ECF No. 9, PageID #: 134 (emphasis added)). The ALJ did not directly discuss Banks's opinion.

#### 2.      Shreeniwas Lele, M.D., Armington's Primary Care Physician

The claimant's primary care provider, [Shreeniwas] Lele, M.D., provided an opinion on June 6, 2019 regarding the claimant's functioning on a form entitled "Physical Medical Source Statement." He opined that the claimant could sit for about four

hours in an eight-hour workday, stand/walk for about four hours in an eight-hour workday, and would need to take unscheduled breaks throughout the day and change positions when sitting about once an hour. He said that the claimant should elevate her legs throughout the day. He said that she did not require the use of an assistive device to walk. As for weight limits, he said that she can occasionally lift up to 20 pounds and frequently lift 10 pounds, and that she could spend up to 80% of an eight-hour workday performing bilateral grasping, fine manipulation, and reaching in front of her body and overhead. He further opined that she would be likely to be off task 20% of the workday, but was capable of low stress work. He believed that she would be absent about one day per month due to symptoms of her impairments or treatment. (Exhibit 20F:1-4).

(ECF No. 9, PageID #: 80).

### 3.       Douglas McLaughlin, D.O., Armington's Treating Psychiatrist

The claimant psychiatrist, Douglas J. McLaughlin, D.O.[,] provided two opinions regarding her functioning. In the first, on August 1, 2018[,] he wrote a general letter stating that he in his opinion, "her mental health conditions have limited her ability to maintain stable employment over the years." He reported that she had difficulty responding to supervision and interacting with coworkers, and added that "in addition to mood and anxiety symptoms, the claimant experiences cognitive impairments with poor focus, poor memory, and difficulty sustaining attention." (Exhibit 18F:3).

On May 29, 2019, Dr. McLaughlin completed a checklist form entitled, "Mental Impairment Questionnaire." He provided a narrative explanation that he was treating the claimant for bipolar disorder, anxiety, and insomnia with trazadone, Lexapro, Xanax, Ritalin, and Lamictal. He opined that the claimant was unable to meet competitive standards for remembering and understanding work assignments, concentrating and persisting in task completion, interacting appropriately with others in the workplace, and responding appropriately to changes in a work setting. He summarized, "Patient cannot work at this time." (Exhibit 19F:2).

(ECF No. 9, PageID #: 72).

## IV.   The ALJ's Decision

As is relevant here, the ALJ issued the following findings of fact and narrative analysis:

3.      The claimant has the following severe impairments: immune

system disorder, osteoarthritis, and disorder of the back…

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1…

5.     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to: occasionally lift 20 pounds and frequently lift 10 pounds; stand/walk for four hours out of an eight-hour workday; sit for six hours out of an eight-hour workday; never climb ladders, ropes, or scaffolds; frequently climb ramps or stairs; occasionally stoop and crawl; frequently crouch; and avoid entirely hazards such as dangerous machinery and unprotected heights. In addition, she is limited to tasks that take 3 to 6 months to learn…

6.     The claimant is capable of performing past relevant work as a customer service representative. This work does not require the performance of work-related activities [that are] precluded by the claimant's residual functional capacity…

7.     The claimant has not been under a disability, as defined in the Social Security Act, from October 7, 2017, through the date of this decision…

(ECF No. 9, PageID #: 69, 73–74, 81, 83).

## V.     Law and Analysis

### A.     Standard of Review

The Court's review is limited to determining whether the ALJ applied proper legal standards and reached a decision supported by substantial evidence. 42 U.S.C. § 405(g); *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). Substantial evidence is "more than a scintilla" of relevant evidence; a reasonable person "might accept [it] as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "It is well established that the party seeking remand bears the burden of showing that a remand is proper…" *Oliver v. Sec'y of Health and Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).

Under this standard of review, a court cannot decide the facts anew, make credibility determinations, or re-weigh the evidence; if the Commissioner's findings as to any fact are supported by substantial evidence, then those findings are conclusive. 42 U.S.C. § 405(g); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference…"). The decisive question is whether the ALJ's conclusions are "substantially supported in the record." *Rogers*, 486 F.3d at 241. If so, then the court must affirm the Commissioner's findings, even if the court does not agree with the Commissioner's decision, or substantial evidence exists to support an alternative result. *Elam*, 348 F.3d at 125 ("The decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without the court second guessing him. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision."). Thus, the movant bears the burden of demonstrating that the ALJ's analysis *lacks* substantial evidence, not merely that substantial evidence supports her position, too. *See Greene ex rel. Greene v. Astrue*, No. 1:10-cv-414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010) ("[A] claimant does not establish a lack of substantial evidence by pointing to evidence … that supports her position. Rather, [a claimant] must demonstrate that there is not sufficient evidence … that would allow a reasonable mind to accept the ALJ's conclusion.").

Despite this deference, a court will not uphold the Commissioner's decision if the ALJ failed to apply proper legal standards, *i.e.*, "fails to follow its own regulations," unless the error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006). Legal error is not

8

harmless if the "error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Id.* And the court will not remand a case for further administrative proceedings absent prejudice on the merits or a deprivation of substantial procedural rights. *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). Similarly, if the ALJ failed to "build an accurate and logical bridge between the evidence and the result," then the court cannot uphold the ALJ's decision, even one supported by substantial evidence. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (citing *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)). This and other 6th Circuit District Courts follow *Sarchet*'s logical-bridge requirement[1] because it ensures that a claimant will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

---

[1] *E.g. Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

**B.       Discussion**

In her sole issue, Armington acknowledges that the ALJ included one mental-impairments-related limitation in the RFC: "tasks that take 3 to 6 months to learn." (ECF No. 10, PageID #: 1207). But Armington argues that the ALJ "erred by failing to account for the 'total limiting effects' of Plaintiff's impairments [by] improperly exclude[ing] limitations contrary to 20. C.F.R. §§ 404.1545, 404.1529[,] and 404.1520c." (ECF No. 10, PageID #: 1193). She argues that the ALJ should have also included limitations that stem from her subjective complaints and "her doctors' opinions … that the primary effects of her pain and mental impairments are her need to take breaks during the day, difficulty remaining focused on tasks, and variability of functioning from one day to the next." (ECF No. 10, PageID #: 1207). Armington attacks the ALJ's RFC finding in two related ways: (1) the ALJ improperly considered and analyzed medical source opinions; and (2) the ALJ failed to consider the record as a whole when analyzing the intensity and persistence of Armington's symptoms, as she subjectively reported them. (ECF No. 10, PageID #: 1209–17). Separately, Armington argues that the ALJ's reliance on Salkin's vocational expert testimony renders the ALJ's Step Four and Step Five findings unsupported by substantial evidence because Salkin testified in response to a hypothetical that matched the final RFC as the ALJ found it (which Armington disputes). (ECF No. 10, PageID #: 1208 (citing, among others, *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002))).

**1.       The ALJ Did Not Err in Considering the Opinion Evidence**

Armington first attacks the ALJ's decision by arguing that he erred in analyzing medical opinion evidence from three sources: (1) State Agency psychological Sandra Banks, Ph.D.; (2) Shreeniwas Lele, M.D.; and (3) Douglas McLaughlin, D.O. (ECF No. 10, PageID #: 1209–13). For the reasons that follow, the Court concludes that the ALJ did not commit reversible error with

respect to these opinions.

           **a.**      **The ALJ's Failure to Address Banks's Opinion that Armington May Need Occasional Redirection Is Harmless**

Armington argues that the ALJ committed reversible error by never discussing "at all" the opinions of the State Agency psychological Sandra Banks, Ph.D., who reviewed Armington's medical records during the State Agency's reconsideration. (ECF No. 10, PageID #: 1210). Armington acknowledges that Banks largely adopted the assessment of Todd Finnerty, Psy.D., who reviewed Armington's claim on initial consideration. (ECF No. 10, PageID #: 1194–95 (stating that "[t]hey both found in the mental RFC that she retains the ability to understand and remember simple and moderately complex instructions and that she can sustain a static set of tasks at an adequate pace")). But Armington notes that, "based on additional evidence and further consideration of her ADHD, Dr. Banks added that [Armington] may require occasional redirection due to concentration difficulties." (ECF No. 10, PageID #: 1195 (citing ECF No. 9, PageID #: 124)). Armington argues that "the ALJ's failure to consider her opinion and include concentration deficits in the RFC is clear error." (ECF No. 10, PageID #: 1211).

The Commissioner concedes that the ALJ did not discuss Banks's opinions—and appears to concede that failing to do so was an error. (ECF No. 11, PageID #: 1232). But the Commissioner argues that any error is, "at worst," harmless. (ECF No. 11, PageID #: 1232). The Commissioner argues as much because the ALJ directly discussed Finnerty's opinion that Armington was moderately limited in her ability to concentrate, persist, and maintain pace, finding it to be "only partially persuasive with respect to concentration limitations." (ECF No. 11, PageID #: 1232). Additionally, the Commissioner notes that the redirection limitation "did not impact [Banks's] overall conclusion … that Plaintiff could sustain tasks without fast pace," an opinion that Finnerty also shared. (ECF No. 11, PageID # 1232). Finally, the Commissioner argues that the ALJ's

finding concerning Armington's overall ability to concentrate, persist, and maintain pace is supported by substantial evidence. (ECF No. 11, PageID #: 1233–34).

Prior to Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). *See also Moscorelli v. Colvin*, No. 1:15–CV–1509, 2016 WL 4486851, *3 (N.D. Ohio Aug. 26, 2016) (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)) ("SSR 96-8p provides, 'the RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.'"). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Nevertheless, an ALJ must still "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a).

As an initial matter, the Court agrees that the ALJ failed to indicate that he evaluated Banks's opinion. While he squarely addresses Finnerty's opinion, the ALJ does not mention Banks by name or by title, nor does the ALJ cite to Banks's opinion. (*See* ECF No. 9, PageID #: 67–83). An ALJ's failure to consider a medical opinion or explain its omission may compel remand because it prevents the court from performing a meaningful review to determine whether substantial evidence supports the ALJ's decision. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). "When an ALJ fails to make a determination and necessary finding of

fact in a sequential step, a reviewing court should not fill that gap." *Harvey v. Comm'r of Soc. Sec.*, No. 16–CV–3266, 2017 WL 4216585, *7 (6th Cir. Mar. 6, 2017) (quotations omitted). At bottom, the ALJ is responsible for "build[ing] an accurate and logical bridge between the evidence and his conclusion" so that the Court can conduct a meaningful review. *Snyder v. Comm'r of Soc. Sec.*, No. 5:13–CV–2360, 2014 WL 6687227, *10 (N.D. Ohio Nov. 26, 2014) (quoting *Woodall v. Colvin*, No. 5:12–CV–1818, 2013 WL 4710516, *10 (N.D. Ohio Aug. 29, 2013)).

The Code of Federal Regulations explains that "[n]o error in either the admission or the exclusion of evidence… by the ALJ… is grounds for vacating, modifying or otherwise disturbing an *otherwise appropriate* ruling…" 20 C.F.R. § 498.224 (emphasis added). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F. 3d at 651 (quoting *Bowen*, 478 F. 3d at 746). Thus, the Court must consider whether the ALJ's failure to address Banks's opinion was harmless error. *Id.*

The Court concludes that the ALJ's error was harmless. Concerning Armington's ability to concentrate, persist, and maintain pace, the ALJ found that Armington was only mildly limited. (ECF No. 9, PageID #: 71). The ALJ summarized his finding like so:

> The claimant contended that she can pay attention for 30 minutes before requiring a break. She said that she has trouble completing tasks. She testified that she is frequently distracted when attempting to perform simple tasks at home, and moves on to other activities without completing chores or caring for her pet. On the other hand, the claimant said that she is also able to follow written and spoken instructions, and complete crossword puzzles and crafts. Appointments with the claimant's physicians do not note any distraction or difficulty paying attention during appointments. Although her psychiatrist describes her as having poor concentration, records from his appointments do not provide any examples of specific lapses in attention that he observed. (Exhibit

13

6F:10, 13, 21; 12F:8; 18F:3, 10).

(ECF No. 9, PageID #: 71–72). The ALJ then discussed Finnerty's opinion on this particular area
of mental functioning:

> The state agency psychological consultant, Todd Finnerty, Psy.D,
> opined that the claimant has moderate limitations in the areas of
> concentrating, persisting, or maintaining pace. He found that she can
> sustain … static tasks without fast pace. (Exhibit 2A:3, 6). I find Dr.
> Finnerty's opinion only partially persuasive, because there is
> insufficient evidence in the record of specific deficits in the
> claimant's ability to concentrate.

(ECF No. 9, PageID #: 72). In short, the ALJ disagreed with Finnerty's opinion that Armington

was moderately limited in this area of mental functioning. And while the ALJ acknowledged that

there was evidence of "poor concentration" in the record, the ALJ reasonably found that the

record's lack of specific lapses in concentration outweighed the mentions of poor concentration.

That finding is supported by substantial evidence, as a reasonable person might accept it as

adequate support. *Rogers*, 486 F.3d at 241. The ALJ's analysis was well within his zone of choice;

even if the Court, sitting as the fact finder, may have found otherwise, the ALJ's reasonable finding

is not to be disturbed. *Mullen*, 800 F.2d at 545.

Additionally, the ALJ's detailed analysis of his finding concerning Armington's ability to

concentrate builds a logical bridge between the record evidence and the ALJ's decision to not

include in the RFC a specific concentration, persistence, and maintaining pace limitation. As

Armington notes, Banks's opinion that Armington may require occasional redirection due to

concentration difficulties is another concentration-related limitation. (ECF No. 10, PageID #:

1195). It is well settled that an ALJ "is required to incorporate [in the RFC] only those limitations

accepted as credible…" *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.

1993). Because the ALJ reasonably found that the record evidence was not specific enough to

support a concentration-related limitation in the RFC, the Court concludes that Armington was not prejudiced on the merits or denied a substantial right when the ALJ failed to discuss Banks's redirection opinion.

Additionally, the Court notes that Banks opined only that Armington "*may* require occasional redirection due to concentration difficulties." (ECF No. 9, PageID #: 134 (emphasis added)). That is non-definitive language, and "[o]ther judges have found no error in the failure to include limitations phrased" in that manner. *Benson v. Comm'r of Soc. Sec.*, No. 3:19–CV–2804, 2021 WL 804150, *3 (N.D. Ohio Mar. 2, 2021) (noting that the ALJ properly "discounted [an] opinion, in part, because the restrictions were couched in uncertain language" specifically the word *may*); *see also Golden v. Berryhill*, No. 3:18–CV–227, 2019 WL 2109322, *7 (N.D. Ohio Feb. 28, 2019) (concluding that the ALJ properly rejected limitations that were stated "not as requirements, but rather as possibilities, as [the opiner] wrote that Plaintiff *may need* these additional steps") (emphasis added), *report and recommendation adopted*, 2019 WL 2106566 (N.D. Ohio May 14, 2019).

Furthermore, Armington does not point to any specific evidence that directly supports a redirection limitation. Instead, Armington generically argues that Banks's and Finnerty's

> assessment of concentration deficits … is consistent with the record, including the repeated finding of poor concentration throughout Dr. McLaughlin's mental status examination records… The diagnosis of ADHD and treatment with Ritalin is also evidence of concentration deficits. And the evidence of side effects of medication, including drowsiness and dizziness, provides support for these limitations.

(ECF No. 10, PageID #: 1210). While Armington's argument highlights the competing evidence of her moderate concentration limitation more generally, it does not directly address Banks's opinion that Armington may need occasional redirection. As always, the claimant bears the

ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). The fact that Armington cannot point to specific evidence that supports a redirection limitation further supports the ALJ's finding that the record lacks specific evidence for concentration limitations. This demonstrates that substantial evidence supports the ALJ's decision to not include a redirection limitation and further shows that Armington was not prejudiced on the merits by the ALJ's failure to directly discuss Banks's opinion. *C.f. Rabbers*, 582 F. 3d at 651.

In sum, while the ALJ should have discussed Banks's opinion, the Court concludes that the ALJ's failure to do so was harmless. The ALJ found that the record evidence did not support specific limitations to Armington's RFC for concentration issues because there was "insufficient evidence … of specific deficits in the claimant's ability to concentrate." (ECF No. 9, PageID #: 72). That finding was reasonable, and it is supported by substantial evidence. Moreover, with that statement, the ALJ built a logical bridge between the record evidence and the omission of all limitations concerning concentration deficits, including one for occasional redirection. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877. Accordingly, this case need not be remanded to address the ALJ's failure to discuss Banks's opinion. *C.f. Rabbers*, 582 F. 3d at 651.

> **b.** **The ALJ Did Not Err with Respect to Lele's Treating Opinion**

Armington argues that the ALJ erred by not adopting certain opinions from Shreeniwas Lele, M.D., Armington's primary care provider. (ECF No. 10, PageID #: 1211). Lele submitted an opinion that covered Armington's physical and mental limitations. (ECF No. 9, PageID #: 750–53). In particular, Armington argues that the ALJ's reason for rejecting Lele's opinion that Armington would be off-task 20 percent of the time is not supported by substantial evidence. (ECF No. 10, PageID #: 1211). Armington also argues that the ALJ erred by "offer[ing] *no explanation*

*whatsoever* [for] why he omitted from [the] … RFC Dr. Lele's opinion regarding [Armington's] need for unscheduled work breaks of 30 minutes every 1-2 hours, the need to elevate her legs, or the likelihood that she would miss work [because of her symptoms]." (ECF No. 10, PageID #: 1211). Armington argues that "[t]hese specific limitations are supported by the ample evidence of Plaintiff's physical limitations and pain and contribute to her overall off-task time…" (ECF No. 10, PageID #: 1211).

The Commissioner argues that the ALJ properly rejected Lele's opinion because Lele "offered no support for his opinion" on Armington's mental limitations, which "complie[s] with the regulations…" (ECF No. 11, PageID #: 1234). Additionally, the Commissioner argues that Lele's "form, consisting mostly of checkboxes, is arguably not a medical opinion; rather, it is mere speculation on an issue Dr. Lele was not even a specialist in, and is therefore entitled to no special significance. (ECF No. 11, PageID #: 1234–35 (citing 20 C.F.R. § 404.1527(d))). The Commissioner further argues that "[t]he Sixth Circuit and numerous district courts have found that failure to give good reasons for rejecting a check-box/checklist opinion, which is unaccompanied by any explanation, is harmless error." (ECF No. 11, PageID #: 1235 (citing various cases)). And the Commissioner argues that because "Lele offered absolutely no explanations to support these extreme limitations, and as such, his opinion was properly discounted as entirely conclusory." (ECF No. 11, PageID #: 1235).

As discussed above, despite coming from a "treating source," Lele's opinion is not entitled to any particular weight or deference because Armington's claim was filed after March 26, 2017. Under the new regulation, the ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20

17

C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship

with the claimant; the source's specialized area of practice, if any; and "other factors that tend to

support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404. 1520c(b)(2) ("The

factors of supportability [ ] and consistency [ ] are the most important factors we consider when

we determine how persuasive we find a medical source's medical opinions…").

The Court concludes that the ALJ did not err in considering Lele's opinion or explaining

how persuasive he found it to be. The ALJ stated that

> Dr. Lele's opinion is generally persuasive, and consistent with
> physical examination records that indicate full strength, but pain
> with physical exertion. However, Dr. Lele offered no support for his
> opinion that the claimant would be off task 20% of the workday, and
> his treatment records do not document any lapses in attention or
> concentration; therefore, I reject this portion of his opinion.

(ECF No. 9, PageID #: 80). With that narrative, the ALJ demonstrated that he considered the

supportability of Lele's opinions concerning Armington's concentration and attention, finding

them to be poorly supported. And the ALJ is correct: Lele's opinions are conclusory. Even though

Lele's "Physical Medical Source Statement" asks the physician who is filling it out to "[a]ttach

relevant treatment notes, radiologist reports, [and] laboratory and test results as appropriate," Lele

did not do so. (ECF No. 9, PageID #: 750). Nor did Lele properly explain his opinions concerning

being off-task or needing unscheduled breaks; at most, he scribbled an illegible two or three words

at the top of the final page of the opinion. (*See* ECF No. 9, PageID #: 750–53). Thus, the ALJ is

correct that Lele's opinion of Armington's mental limitations is not well supported. Additionally,

by discussing the consistency of Lele's opinion with regards to Lele's treatment notes of

Armington's physical impairments, the ALJ implicitly acknowledged that Lele's treatment notes

and his opinion of Armington's psychological limitations were inconsistent. Armington does not

direct the Court to evidence from Lele's treatment notes that indicate that his opinions were, in

18

fact, consistent.

Because the ALJ addressed the key factors of the new regulation—supportability and consistency—and his findings are supported by substantial evidence, the Court concludes that the ALJ did not err in considering Lele's opinion or explaining his analysis of it. 20 C.F.R. §§ 404.1520c(c), 404. 1520c(b)(2).

### c. The ALJ Did Not Make Medical Judgments in Evaluating McLaughlin's Opinion

Armington objects to the ALJ's finding concerning two opinions from Douglas McLaughlin, D.O., Armington's primary mental health provider, which the ALJ found to be "'at odds' with his treatment records." (ECF No. 10, PageID #: 1211–13). Armington acknowledges that there are inconsistencies in McLaughlin's opinion. (ECF No. 10, PageID #: 1211–12). But Armington argues that the ALJ, "aside from the superficially inconsistent memory findings/conclusions, the ALJ pointed to no other evidence from Dr. McLaughlin's treatment records that was 'at odds' with his opinion. Rather, he pointed only to perceived deficiencies in the record, which amount to nothing more than lay reassessment of the record…" (ECF No. 10, PageID #: 1213).

The Commissioner responds by summarizing McLaughlin's two opinions and the ALJ's treatment of them. (*See* ECF No. 11, PageID #: 1236–37). Without directly saying so, it appears to the Court that the Commissioner argues that the ALJ's analysis of McLaughlin's opinion is supported by substantial evidence. (*See* ECF No. 11, PageID #: 1237). The Commissioner does not respond to Armington's argument that the ALJ relied on his lay opinion to reject McLaughlin's opinion.

An RFC determination is a legal finding, not a medical determination; thus, an "ALJ—not a physician—ultimately determines a claimant's RFC." *Coldiron v. Comm'r of Soc. Sec.*, 391 F.

App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B)); *see also Nejat*, 359 F. App'x at 578 ("Although physicians opine on a claimant's residual functional capacity to work, [the] ultimate responsibility for capacity-to-work determinations belongs to the Commissioner."); 20 C.F.R. § 404.1546(c) ("[T]he administrative law judge … is responsible for assessing your residual functional capacity."). In doing so, the ALJ evaluates, rather than interprets, the medical evidence and the claimant's testimony. *Coldiron*, 391 F. App'x at 439. Of course, the "ALJ may not make medical judgments" in fashioning an RFC. *Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006). But "[a]n ALJ does not improperly assume the role of a medical expert by [merely] weighing the medical and non-medical evidence before rendering an RFC finding." *Id.* (citing *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir.2009)). Similarly, "[a]lthough the ALJ may not substitute his opinion for that of a physician" in fashioning an RFC, the ALJ "is not required to recite the medical opinion of a physician verbatim in his [RFC] finding." *Poe*, 342 F. App'x at 157 (citing 20 C.F.R. § 404.1545(a)(3)).

In *Simpson v. Comm'r of Soc. Sec.*, which Armington cites in support, the ALJ found a treating physician's conclusions to be "so extreme as to be implausible," and the ALJ "found it "inconceivable that this claimant who has had pain due to pelvic adhesions with otherwise normal examinations would be completely unable to move or do anything at all." 344 F. App'x 181, 194 (6th Cir. 2009). The Sixth Circuit concluded that the ALJ "substituted [the expert's] medical opinion with his own in determining the degree of pain resulting from the condition from which [the claimant] suffere[d], and did not merely rely upon the claimant's testimony as to her daily activities or another doctor's testimony as to her condition." *Id.*

The Court concludes that the ALJ did not make medical judgments in evaluating the evidence and fashioning the RFC. The ALJ summarized McLaughlin's two opinions like so:

The claimant psychiatrist, Douglas J. McLaughlin, D.O. provided two opinions regarding her functioning. In the first, on August 1, 2018 he wrote a general letter stating that he in his opinion, "her mental health conditions have limited her ability to maintain stable employment over the years." He reported that she had difficulty responding to supervision and interacting with coworkers, and added that "in addition to mood and anxiety symptoms, the claimant experiences cognitive impairments with poor focus, poor memory, and difficulty sustaining attention." (Exhibit 18F:3).

On May 29, 2019, Dr. McLaughlin completed a checklist form entitled, "Mental Impairment Questionnaire." He provided a narrative explanation that he was treating the claimant for bipolar disorder, anxiety, and insomnia with trazadone, Lexapro, Xanax, Ritalin, and Lamictal. He opined that the claimant was unable to meet competitive standards for remembering and understanding work assignments, concentrating and persisting in task completion, interacting appropriately with others in the workplace, and responding appropriately to changes in a work setting. He summarized, "Patient cannot work at this time." (Exhibit 19F:2).

(ECF No. 9, PageID #: 72). The ALJ then analyzed McLaughlin's opinions, stating that

Because Dr. McLaughlin is the claimant's primary mental health treatment provider, and treated her throughout the period under consideration this claim, I gave his opinions careful consideration, but find that these opinion statements are at odds with his own clinical records. Mental status examinations documented in his treatment records describe her as having poor concentration, but do not provide examples, and there is no evidence that he conducted formal mental status examination testing. Additionally, while he expresses the opinion that the claimant has memory deficits, his mental status examination notes consistently describe her as having intact immediate, recent, and remote memory. He also reports that she has a history of difficulty interacting with others in the workplace, but there is no documentation or examples of difficulty in the claimant's interpersonal relationships in his records. He alludes to the fact that the claimant is attending therapy in his treatment records; however, psychotherapy notes are not in the record. Therefore, there are no observations of other clinicians regarding the claimant's mental status. (Exhibit 6F, 12F, 18F, 29F).

(ECF No. 9, PageID #: 72–73).

Unlike in *Simpson*, where the ALJ relied on his own lay interpretation of the claimant's

21

pain and symptoms despite a treating source opining otherwise, here the ALJ merely evaluated the consistency and supportability of McLaughlin's opinion. *Meece*, 192 F. App'x at 465. While Armington would have found it to be more persuasive, Armington has not shown that the ALJ's analysis of McLaughlin's opinion was improper. Additionally, a reasonable person might accept the evidence that the ALJ discusses as adequate to support the conclusion that McLaughlin's opinion lacks supportability and consistency. *Rogers*, 486 F.3d at 241. As such, the ALJ's analysis of this opinion is not to be disturbed.

### 2.  The ALJ Properly Considered Armington's Subjective Statements

Armington argues that the ALJ's analysis of Armington's subjective statements "is contrary to law and not supported by substantial evidence." (ECF No. 10, PageID #: 1213–17). Primarily, Armington argues that the ALJ failed to create a logical bridge between Armington's subjective statements and the ALJ's ultimate finding that Armington is not disabled. (ECF No. 10, PageID #: 1213–17). Of the factors that are relevant to an analysis of a claimant's subjective statements, Armington focuses on her activities of daily living; location, duration, frequency, and intensity of the pain or other symptoms and any aggravating factors; and the type, dosage, effectiveness, and side effects of medication, and treatments other than medication. (ECF No. 10, PageID #: 1213–16). Armington also argues that her forty-plus years of "almost continuous employment," while not "entitl[ing] her to enhanced credibility," nevertheless "lends to her credibility." (ECF No. 10, PageID #: 1212–13).

The Commissioner argues that Armington's position "is not well supported." (ECF No. 11, PageID #: 1237). The Commissioner notes that "[t]he ALJ concluded that, while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, []he did not find Plaintiff's statements concerning the intensity, persistence, and limiting effects

of such symptoms entirely consistent with the medical evidence and other evidence." (ECF No. 11, PageID #: 1237). The Commissioner argues that the ALJ "evaluated Plaintiff's various pain complaints as part of the symptom[s] evaluation process… include[ing] a very thorough assessment that considered Plaintiff's subjective complaints as well as the objective medical evidence, medical opinions, treatment history, activities of daily living, and her vocational background." (ECF No. 11, PageID #: 1237–38).

A claimant's statements as to "pain or other symptoms will not alone establish that [she is] disabled…" *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 55, 531 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1529(a)). The Sixth Circuit has established a two-part test to evaluate complaints of disabling symptoms when the symptoms form a basis of the claimant's disability claim. *Rogers*, 486 F.3d at 247; *see also* Soc. Sec. Ruling 16–3p, 2017 WL 5180304, at *3–4 (Oct. 25, 2017).[2] First, the ALJ must determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." SSR 16–3p, 2017 WL 5180304, at *3. If the first part of the test is satisfied, the ALJ must then "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *4. If a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, then the ALJ must examine the entire case record. *Id.* SSR 16–3p lists the factors relevant to the ALJ's determination at this step: (1) the individual's daily activities; (2) the location, duration, frequency and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) any medication the

---

[2] Social Security Ruling 16–3p superseded SSR 96–7p, and is to be used by ALJs when making determinations and decisions on or after March 28, 2016. SSR 16–3p, 2017 WL 5180304, at *1.

individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain; and (7) "[a]ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms." SSR 16–3p, 2017 WL 5180304, at *7–8; *see, e.g.*, *Morrison v. Comm'r of Soc. Sec.*, No. 16–CV–1360, 2017 WL 4278378, at *4 (6th Cir. Jan. 30, 2017). An ALJ is not required to expressly address all of these factors, but the ALJ should sufficiently articulate the assessment of the evidence to assure the court that the ALJ considered all of the relevant evidence. *Collins v. Comm'r of Soc. Sec.*, No. 5:18–CV–2082, 2019 WL 3797931, *5 (N.D. Ohio July 30, 2019), *report and recommendation adopted*, *Collins v. Berryhill*, 2019 WL 3804149 (N.D. Ohio Aug. 13, 2019).

At Step Two, the ALJ found that Armington had the following severe impairments: "immune system disorder, osteoarthritis, and disorder of the back." (ECF No. 9, PageID #: 69). Armington does not challenge this finding. Thus, the ALJ satisfied the first step in the two-step symptoms-analysis process. SSR 16–3p, 2017 WL 5180304, at *3–4. The ALJ was then obligated to consider Armington's subjective statements under the relevant factors and sufficiently articulate that analysis. *Collins*, 2019 WL 3797931 at*5. The ALJ found that Armington's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (ECF No. 9, PageID #: 75).

Armington objects to the ALJ's analysis of her subjective statements in four ways. For the reasons that follow, the Court concludes that the ALJ's finding concerning those statements was not error.

a. **The ALJ Properly Considered Armington's Daily Activities**

24

Armington argues that the ALJ only "briefly" discussed Armington's daily activities and that "he *never* discussed how her activities of daily living support his findings or fail to support her described limitations." (ECF No. 10, PageID #: 1214). But, as the Commissioner points out, the ALJ noted that Armington "become[s] sidetracked when she is trying to complete tasks such as feeding her dogs and forgets to complete what she set out to do… [and] has stopped driving because she is not alert enough." (ECF No. 9, PageID #: 75). Similarly, the ALJ mentioned that Armington "complete[s] crossword puzzles and crafts." (ECF No. 9, PageID #: 72). The ALJ also noted that Armington "could pay bills, drive, and shop using a computer." (ECF No. 9, PageID #: 71). And the ALJ mentioned that Armington "ha[s] appropriate grooming and hygiene." (ECF No. 9, PageID #: 72). Because the ALJ clearly considered Armington's daily activities, Armington's allegation is unpersuasive.

### b.   The ALJ Properly Considered Armington's Pain and any Aggravating Factors

Armington next argues that the ALJ failed to create a logical bridge between the evidence concerning the location, duration, frequency, and intensity of her pain, as well as any aggravating factors, and his ultimate finding that Armington is not disabled. (ECF No. 10, PageID #: 1215). The Commissioner points out, though, that the ALJ's summaries of the medical evidence and the treatments received were "an exhaustive discussion." (ECF No. 11, PageID #: 1239).

The ALJ directly stated that he considered Armington's "subjective pain experience" in explaining his finding. (ECF No. 9, PageID #: 80). And as the Commissioner points out, the ALJ thoroughly cataloged Armington's statements concerning her pain. (*See* ECF No. 9, PageID #: 70–80). In fact, the ALJ's RFC finding focuses significantly on Armington's pain and the effect that that pain, and its root causes, have on Armington:

> The records described above regarding the claimant's long history

of back impairments, with associated pain support the finding that she is limited to walking and standing no more than four hours out of an eight-hour workday, can never climb ladders, ropes, or scaffolds, and must avoid all hazards such as unprotected heights. She is also limited to occasional stooping and crawling, and frequent climbing of ramps and stairs, and crouching. All of these impairments are related primarily to the claimant's lumbar and thoracic degenerative disc disease. The findings regarding the claimant's cervical spine add additional support for the limitation to lifting no more than 20 pounds occasionally. The claimant's reliance on sedating medications and the occasional mention of dizziness and falls in the record also help to support the finding that the claimant can never climb ladders, ropes, or scaffolds, and must avoid hazards. I also find that the claimant experiences pain that would make it difficult for her to learn complex tasks, because she would be distracted by physical pain and/or need to take medication. Therefore, I limit her to tasks that would require no more than 3 to 6 months to learn.

(ECF No. 9, PageID #: 79). Far from failing to address Armington's subjective statements about her pain, the ALJ considered them—and credited them in fashioning the RFC.

The Court concludes that the ALJ built a logical bridge between the evidence of Armington's pain and Armington's functional limitations.[3] In her brief, Armington generally rehashes the same evidence that the ALJ highlighted above and throughout the rest of his decision. (*See* ECF No. 10, PageID #: 1215). This evidence is substantial evidence that supports the ALJ's findings. *Rogers*, 486 F.3d at 241. While Armington would have weighed the evidence more strongly in her favor, she never alleges that the ALJ impermissibly parsed the record, mischaracterized this evidence, or drew an improper conclusion from the evidence. And she fails to allege or demonstrate that the ALJ's finding lacks substantial evidence, which is her burden before this Court. *See Greene ex rel. Greene*, 2010 WL 5021033, at *4 ("[A] claimant does not

---

[3] Even though the ALJ found that Armington's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" (ECF No. 9, PageID #: 75), the Court does not find that statement and the ALJ's crediting of Armington's pain to be incongruous.

establish a lack of substantial evidence by pointing to evidence … that supports her position. Rather, [a claimant] must demonstrate that there is not sufficient evidence … that would allow a reasonable mind to accept the ALJ's conclusion."). The Court cannot reweigh the evidence; thus, the ALJ's reasonable and supported decision is not to be disturbed. *Mullen*, 800 F.2d at 545.

### c. The ALJ Properly Considered Armington's Medications and Non-Medication Treatments

Armington also argues that the ALJ failed to create a logical bridge between her subjective statements concerning the type, dosage, effectiveness, and side effects of her medications, as well as any treatments other than medications, and the ALJ's finding that Armington is not disabled. (ECF No. 10, PageID #: 1216). In support, Armington merely rehashes the kinds of treatments that she "has engaged in," without much else. (ECF No. 10, PageID #: 1216). The Commissioner responds that the ALJ "covered the various treatments [that Armington] received, including injections, radiofrequency ablation, surgery, physical therapy, and opioid and nonopioid pain medications and the effect of such treatment (Tr. 22-28)."

The Commissioner is correct. (ECF No. 9, PageID #: 70, 75, 77–80). For example, the ALJ noted that "[t]he claimant received cervical radiofrequency ablation and an injection on November 20, 2017[, and that a]t her next appointment, the claimant reported that this provided 100% relief from pain." (ECF No. 9, PageID #: 77; *see also* ECF No. 9, PageID #: 79 ("[T]he record shows a good response to injections and radiofrequency ablation.")). The ALJ noted that Armington "reported that the only medication that relieves her pain makes her loopy, and that she is not able to drive, and has been asked not to work while on the medication because she was making ridiculous errors that [she] would not normally make." (ECF No. 9, PageID #: 75 (quotations omitted)). And, while explaining the RFC, the ALJ directly stated that "claimant's reliance on sedating medications and the occasional mention of dizziness and falls in the record also help to

27

support the finding that the claimant can never climb ladders, ropes, or scaffolds, and must avoid hazards." (ECF No. 9, PageID #: 79).

From this discussion, the Court concludes that the ALJ properly considered Armington's subjective statements about her medications and treatments. And the ALJ's discussion demonstrates that he credited her subjective statements about her medication in fashioning the RFC. Moreover, the ALJ's statements create a logical bridge between the evidence and the limitation that he imposed on climbing ladders, ropes, or scaffolds and avoiding workplace hazards. *Collins*, 2019 WL 3797931 at*5. And again, while Armington highlights evidence in the record that could support an alternative finding, she does not demonstrate that the ALJ's finding lacks substantial evidence. *See Greene ex rel. Greene*, 2010 WL 5021033, at *4 ("[A] claimant does not establish a lack of substantial evidence by pointing to evidence … that supports her position. Rather, [a claimant] must demonstrate that there is not sufficient evidence … that would allow a reasonable mind to accept the ALJ's conclusion."). The ALJ's reasonable and supported decision is not to be disturbed. *Mullen*, 800 F.2d at 545.

### d.    The ALJ Was Not Obligated to Credit Armington's Work History

Finally, Armington argues that her decades of "exemplary work history… is a factor that lends to her credibility, not detracts from it." (ECF No. 10, PageID #: 1216–17). The Commissioner responds by arguing that "[t]he regulations do not require an ALJ to credit the subjective complaints of any claimant who has an established work history." (ECF No. 11, PageID #: 1239 (citing 20 C.F.R. § 404.1529(c))).

The Commissioner is correct that work history—either positive or negative—is not a listed factor. Nevertheless, Armington is correct that Courts have mentioned a claimant's "extensive work history and attempts to continue working despite [their] disability [as] support [for their]

credibility." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1529(c)(3) ("We will consider all of the evidence presented, including information about your prior work record…"). Still, the Court has concluded that the ALJ properly assessed Armington's subjective statements, and that substantial evidence supports those findings. Moreover, as the Commissioner notes, there is no indication that the ALJ used Armington's extensive work history negatively. *C.f. Gilliam v. Comm'r of Soc. Sec.*, No. 2:18–CV–12793, 2019 WL 6112696, *11 (N.D. Ohio July 10, 2019) (noting that, while work history is a valid consideration, it is not to be used "to support a finding that a claimant is not credible because [of] her sporadic work history"). As such, the Court declines to place a thumb on the scale in Armington's favor simply because she had decades of steady work history.

*          *          *

Reading the decision as a whole, the court concludes that the ALJ properly considered Armington's subjective statements about her symptoms and assessed their intensity, persistence, and limiting effects. SSR 16–3p, 2017 WL 5180304, at *7–8. The court further concludes that the ALJ's determinations are reasonable and sufficiently clear to create a logical bridge between the evidence and the finding that Armington's statements were not entirely consistent with the record evidence. Because "a reasonable mind might accept [the evidence] as adequate to support" the ALJ's determination, the Court concludes that substantial evidence supports the ALJ's finding. *Norris v. Comm'r of Soc. Sec.*, No. 11–CV–5424, 2012 WL 372986, at *5 (6th Cir. Feb. 7, 2012) (citing *Rogers*, 486 F.3d at 241). As such, the Court will not disturb them.

### 3.     The Vocational Expert's Testimony Is Substantial Evidence to Support the ALJ's Step Four Finding

Although indirectly, Armington also argues that the ALJ's Step Four (and proposed Step Five) finding cannot be supported by substantial evidence because the ALJ erred in crafting her

29

RFC, as discussed above. (ECF No. 10, PageID #: 1207–08). The Court disagrees.

It is well settled that an ALJ "is required to incorporate [in the RFC] only those limitations accepted as credible by the finder of fact." *Casey*, 987 F.2d at 1235. And concerning vocational expert testimony, it "may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001).

The ALJ relied on Salkin's testimony in his Step Four finding that Armington can perform some of her past relevant work. (*See* ECF No. 9, PageID #: 81–82). The Court concludes that the ALJ elicited Salkin's vocational expert testimony with a hypothetical that accurately set forth Armington's physical and mental impairments, as the ALJ reasonably found them. (*Compare* ECF No. 9, PageID #: 74 *and* ECF No. 9, PageID #: 101–02). After discussing Armington's past work, Salkin testified that the hypothetical individual could perform Armington's past roles as a customer service representative. (ECF No. 9, PageID #: 101). And "utilizing [her] transferable skills, [the hypothetical individual could do] record keeping and word processing, data entry, scheduling[,] and then those document prep … skills [that] we talked about…" (ECF No. 9, PageID #: 102).

As discussed above, the RFC is supported by substantial evidence. Because Salkin testified to a hypothetical that accurately set forth Armington's RFC, and because the ALJ relied on Salkin's response to that hypothetical in his Step Four finding that Armington can still perform some of her past relevant work, the Court concludes that the ALJ's finding is supported by substantial evidence. *Smith*, 307 F.3d at 378. As such, the Court will not disturb the ALJ's Step Four finding. *Id.*

## VI.    Conclusion

Because the ALJ followed proper procedures and his findings are supported by substantial

evidence, the Court AFFIRMS the Commissioner's final decision denying to Armington disability insurance benefits.

IT IS SO ORDERED.

DATED: August 16, 2021

_____*s/Carmen E. Henderson*_____
Carmen E. Henderson
United States Magistrate Judge